## In re Petition of Ostilio Fordiani for Naturalization.

Third Judicial District, Bridgeport, October Term, 1922.
Wheeler, C. J., Beach, Curtis, Burpee and Keeler, Js.

Acting under its constitutional power "to establish an uniform Rule of Naturalization," Congress conferred exclusive jurisdiction to naturalize aliens as citizens of the United States upon, *inter alia*, all State courts of record having a seal, a clerk and general jurisdiction. *Held* that no State court thus designated could be compelled to take such jurisdiction, but it might, in the absence of a controlling statute of its own State, act or decline to act.

Whether in view of General Statutes, §§ 5454–5456, imposing such jurisdiction upon the Superior Court, any other State court could act upon this matter, *quære*.

If any other State court has such power, it acts by virtue of its general jurisdiction, and, although it must act upon the terms and conditions specified by Congress, it does not become a court of the United States.

Congress may grant or withhold the privilege of naturalization at its will, for its act is one of sovereign grace; but a court cannot so act: in each case it must determine judicially, and not as a matter of absolute discretion, whether the qualifications prescribed by Congress exist.

A naturalization proceeding in our courts is a judicial proceeding and its decision a judgment of the court.

The fact that Congress provided for no direct review of the court's action by writ of error or appeal, and that it has been judicially determined that no such review can be had of naturalization proceedings in a Federal court, do not determine the nonexistence of a right to such review of proceedings in a State court.

A naturalization proceeding in a City Court having jurisdiction is a "cause" or "action" within the terms of the statute, § 5820, granting appeals to this court.

Such right of appeal exists even though in the strictest sense there is no necessary adverse party in such proceeding; for in a broad sense the Government may be considered an adverse party; and moreover, the existence of such party is not a condition to the existence of a right of appeal.

While a naturalization proceeding is of such a character that its decision must rest largely with the trial court, and interlocutory rulings or those made in the taking of evidence, though erroneous because

not conforming strictly to the rules of law, will not ordinarily furnish ground for successful appeal, yet where they operate to deprive one of the parties of his right to a fair trial or to a full hearing, or where there is a determination made in violation of law or with an abuse of discretion, as was apparent in the facts alleged and admitted by the demurrer, an appeal will lie.

Argued Oct. 31st, 1922, reargued Jan. 26th—decided Mar. 1st, 1923.

APPEAL by the petitioner from the refusal of the City Court of Meriden, *Dunne, J.*, to grant his petition for naturalization, taken to the October Term, 1922, of this court to be held at Bridgeport, where the United States filed a motion to dismiss and a plea to the jurisdiction, to which the petitioner demurred. *Motion to dismiss denied and petitioner's demurrer sustained.*

*Lewis J. Somers*, for the appellant (petitioner).

*George H. Cohen*, Assistant United States Attorney, for the appellee (the United States).

WHEELER, C. J. The appeal from the dismissal of the petition of Fordiani for naturalization is based upon a number of assigned errors which include the conduct of the hearing by the trial court in so arbitrary and capricious a manner as to constitute an unreasonable exercise of the judicial discretion, and such as to deny the petitioner a fair and impartial hearing, the equal protection of the laws, and due process of law. The motion to dismiss and the plea to the jurisdiction are based upon the same grounds, and we will dispose of such as have been pursued in argument of counsel.

Counsel for the United States contends that the naturalization proceedings by the City Court of Meriden are Federal instead of State in their nature, and that the City Court of Meriden for the time being was a court of the United States acting under the laws of the

United States. The Congress of the United States, in Article I, § 8, of the Federal Constitution, was given power "To establish an uniform Rule of Naturalization." Acting within this power, Congress conferred exclusive jurisdiction to naturalize aliens as citizens of the United States upon certain courts, including "all courts of record in any State . . . having a seal, a clerk, and jurisdiction in actions at law or equity, . . . in which the amount in controversy is unlimited." United States Compiled Statutes (1916, Vol. 5) § 4351. By virtue of this Act the City Court of Meriden assumed jurisdiction of this petition for naturalization. No State court designated by Act of Congress could be compelled to take jurisdiction of naturalization proceedings; it might, in the absence of a statute of its own State specifying which of its courts should take such jurisdiction, exercise it or decline to act.

General Statutes, §§ 5454–5456, imposed upon the Superior Court the duty of admitting aliens to citizenship, and that court was thereafter bound to take such jurisdiction. "The right of the State to limit the exercise of the jurisdiction involves the right to select the court which may act or forbid any to act." *Freeholders of Passaic* v. *Slater*, 85 N. J. L. 621, 622, 90 Atl. 378; *Rushworth* v. *Judges of Hudson Common Pleas*, 58 N. J. L. 97, 98, 32 Atl. 743.

After the deposit of this power in the Superior Court, whether any court other than that court could act upon this subject-matter unless subsequently authorized by our General Assembly, we leave undecided, since neither of the parties to this proceeding questions the power of the City Court to act. We shall accordingly dispose of the matter upon the claims made of record.

Assuming that the City Court of Meriden had power to hear and determine this petition, it acts by virtue of its general jurisdiction. That, if existent, is ample

to permit it to hear and determine such a petition, and what the Act of Congress does is to permit it to act upon this subject-matter which it might have kept within the exclusive jurisdiction of the Federal courts. The Act of Congress says that it confers jurisdiction upon the courts named in the Act; what it does is to permit jurisdiction to be taken by these courts over this new subject-matter. "Congress cannot compel" a State court "to entertain jurisdiction in any case, or to perform any judicial act." *Morgan* v. *Dudley*, 57 Ky. (18 B. Mon.) 693, 715.

Whether the State court acts, as does our Superior Court, by virtue of our own statute, or by virtue of its own jurisdiction unaided and unrestricted by a statute of its State, in either case it exercises its power over petitions in naturalization proceedings upon the terms and conditions stated in the Act of Congress. And it can act in no other way. *United States* v. *Ginsberg*, 243 U. S. 472, 37 Sup. Ct. 422; *Johannessen* v. *United States*, 225 U. S. 227, 240, 32 Sup. Ct. 613; *County of Hampden* v. *Morris*, 207 Mass. 167, 171, 93 N. E. 579; Note to *Oehlert* v. *Oehlert*, 6 A. L. R. 406 (233 Mass. 497, 124 N. E. 249). This is far from saying that the court in this proceeding becomes a court of the United States. Neither Congress nor the Executive Department of the Federal Government can impose upon any court of a State the performance of a judicial duty. The two governments, Federal and State, are separate entities, and the framers of the Federal Constitution intended that they should so remain. But since the subject of naturalization is within the exclusive power of Congress, it may determine what qualifications the alien shall possess before he be admitted to citizenship, or it may determine that none shall be admitted. It grants or it withholds a political privilege. Whatever it determines to be the qualifications for admission,

those the Federal court or the State court taking juris-
diction, must observe and enforce strictly.

In this connection the Government contends that
admission to citizenship is a political privilege ex-
tended by sovereign grace, and therefore it is within
the discretion of the naturalization court to grant or
withhold this privilege. A few courts have so held
through, as we conceive, a misunderstanding of the
function of the court. Congress may grant or withhold
the privilege of naturalization at its will, for its act is
one of sovereign grace; but when it determines that
aliens possessing certain qualifications may be admitted
to citizenship by certain courts, it leaves to the court
the judicial function of determining whether an appli-
cant possesses these qualifications or not. The court,
unlike the Congress, does not act as a matter of sover-
eign grace; it never so acts, for that would be beyond
and outside the judicial function. Whenever it acts, it
acts judicially and by a recognized procedure. When
it hears a petition in naturalization it can act in no
other way than its normal and legal way, for the pro-
ceeding is a judicial proceeding. The court's decision
is a judgment of the court and is duly recorded as
such. It possesses the characteristics of any other
judgment of the court and therefore is unassailable
collaterally. In *Johannessen* v. *United States*, 225
U. S. 227, 236, 32 Sup. Ct. 613, the court says: "It was
long ago held in this court, in a case arising upon the
early acts of Congress which submitted to courts of
record the right of aliens to admission as citizens, that
the judgment of such a court upon the question was,
like every other judgment, complete evidence of its own
validity. *Spratt* v. *Spratt*, 4 Pet. 393, 408. This deci-
sion, however, goes no further than to establish the
immunity of such a judgment from collateral attack."
*United States* v. *Ginsberg*, 243 U. S. 472, 474, 37 Sup.

Ct. 422; *Dean, Petitioner,* 83 Me. 489, 22 Atl. 385; *State ex rel. Lacy* v. *Brandhorst,* 156 Mo. 457, 461, 56 S. W. 1094; *Oehlert* v. *Oehlert,* 233 Mass. 497, 124 N. E. 249; *Morgan* v. *Dudley,* 57 Ky. (18 B. Mon.) 693, 713; *In re Hennig,* 248 Fed. Rep. 990, 991.

The applicant for naturalization who has made his petition in due form and to the right court, and has by adequate proof complied with the terms and conditions prescribed by the Federal law, is entitled to be admitted to citizenship. The privilege which he had to petition for naturalization has now become a right which cannot be denied him. This conclusion is a necessary corollary to the determination that a naturalization proceeding before a court is a judicial proceeding and its decision a judgment of the court. We find authoritative sanction for this conclusion in the decisions of the United States Supreme Court. *Johannessen* v. *United States, supra; United States* v. *Ginsberg, supra.* See also *United States* v. *Shanahan,* 232 Fed. Rep. 169, 171.

The Government's next position is that there is no direct review by writ of error or appeal provided for by Congress, hence none can exist in the State court. It is true that the Naturalization Act does not specifically make provision for a review by writ of error or appeal. In *United States* v. *Ness,* 245 U. S. 319, 326, 38 Sup. Ct. 118, it is said: "For Congress did not see fit to provide for a direct review by writ of error or appeal." Prior to this decision the great majority of Federal courts had allowed such a review. The Naturalization Act does not attempt to control the procedure of the State court. The State court, as we have held, takes jurisdiction, at its will or that of the statute of its State, and when it hears a petition in naturalization it acts judicially and renders a judgment thereon. Its power to act over this subject-

matter is controlled by the terms and conditions of the Act of Congress. But the procedure governing its action is its own. The manner in which the petition for naturalization is heard is in accordance with its own and not the Federal procedure. This, too, is the necessary sequence to the holding that the proceeding is judicial and the decision thereon a judgment. Where the precise point has come before the State courts they have, with two exceptions, sustained or permitted the right of review. In *United States* v. *Hrasky*, 240 Ill. 560, 88 N. E. 1031, the United States appealed from a decision of a City Court granting a petition for naturalization, and the appeal was sustained. The court, at page 563, says: "The United States statutes provide that the facts to justify the naturalization of the applicant shall appear to the satisfaction of the court. There is vested, therefore, in that tribunal the discretion to determine whether an alien is fit for admission. But this discretion is not arbitrary. It must be a sound judicial discretion, and if abused is subject to review. . . It must be regulated according to known rules of law, and is a legal and not a personal discretion." In *United States* v. *Gerstein*, 284 Ill. 174, 119 N. E. 922, a similar appeal by the government was sustained. And in *State ex rel. U. S.* v. *District Court*, 107 Minn. 444, 120 N. W. 898, the government procured a writ of *certiorari* to review the judgment of the District Court admitting the petitioner as a citizen, and the court entertained it and affirmed the judgment. *Dean, Petitioner*, 88 Me. 489, 22 Atl. 385; *State ex rel. Lacy* v. *Brandhorst*, 156 Mo. 457, 56 S. W. 1094; *Bell* v. *State*, 7 Ohio App. 185; *In re Naturalization of Vura*, 5 Ohio App. 334. See also 1 Ruling Case Law, § 70, p. 854; Note, Anno. Cas. 1915C, p. 428. The cases upon which the government relies are these: In *United States* v. *Ness*, 245 U. S. 319, 38 Sup. Ct.

118, the question whether an appeal will lie in a naturalization proceeding was not directly before the court. The question litigated was whether the United States, after entering an appearance in a naturalization proceeding and after judgment admitting the petitioner to citizenship, could, under § 15 of the Naturalization Act, maintain suit to cancel the certificate so issued. The court held that the suit could be maintained, and said (p. 325): "Opposition to the granting of a petition for naturalization may prevail, because of objections to the competency or weight of evidence or the credibility of witnesses, or mere irregularities in procedure. A decision on such minor questions, at least of a State court of naturalization, is, though clearly erroneous, conclusive even as against the United States if it entered an appearance under § 11. For Congress did not see fit to provide for a direct review by writ of error or appeal." We do not think the court intended by this language to deny to the United States the right of appeal from the decision of the State court which was given by the law of its own State, much less to deny to the State court the right of appeal given by the law of its State. All that the language signifies is that as to the specified matters the judgment of the State court as to these matters was conclusive upon the United States, unless set aside upon appeal in its own State. The opinion nowhere suggests that the State court in a naturalization proceeding acts as a Federal agency. And in view of the care with which that court avoids usurping State authority, we cannot assume that by these words the court intended to do this very thing.

*In re Wilkie* (Cal.), 208 Pac. Rep. 144, places its decision upon *United States* v. *Ness*, 245 U. S. 319, 38 Sup. Ct. 118, and *State ex rel. Gorelick* v. *Superior Court*, 75 Wash. 239, 134 Pac. 916, and prin-

cipally upon the ground that the State court was exercising a function of the Federal government and as such was a Federal agency, and upon the further ground that to permit the appeal in the State court while denying it in the Federal court would destroy the uniform rule of naturalization which the Constitution establishes. The first ground we have sufficiently discussed. The second is a misconception. The terms and conditions of the Naturalization Act establish the uniform rule of the Act. When the State court enforces these it conforms to the only uniform rule of the Act. The procedure by which it enforces the rule is its own concern, and has nothing to do with the establishment of the rule. *State ex rel. Gorelick* v. *Superior Court,* 75 Wash. 239, 134 Pac. 916, relies upon *United States* v. *Dolla,* 177 Fed. Rep. 101, which was not the law of the Federal courts when announced; the grounds of the decision that naturalization by a court is a matter of grace, that the State court is a Federal agency, and upon the wording of the Federal Act, have already been disposed of. In following *United States* v. *Ness,* 245 U. S. 319, 38 Sup. Ct. 118, the Federal courts have not always placed the denial of the right of review upon the right ground. Thus *Marx* v. *United States,* 276 Fed. Rep. 295, 299, and *United States* v. *Kichin,* 276 Fed. Rep. 818, 822, are placed upon the ground that the granting of a naturalization petition is an act of grace and not a right. The true ground for the Federal court would be that an appeal is never a matter of right but always subject to legislative control, and as the Naturalization Act as interpreted by *United States* v. *Ness* provides for no appeal, none exists. These courts hold that a naturalization proceeding rests in the discretion of the court, but that this is a judicial and not an arbitrary discretion. How the petitioner is to have the case of arbitrary discretion

reviewed, these decisions do not tell us. When a certificate of naturalization is granted in violation of recognized rules of law and procedure, the United States has the power under § 15 of this Act to have the certificate canceled. For example, in *United States v. Milder*, 284 Fed. Rep. 571, the examiner was denied the right to present evidence that the petitioner was engaged in violating a criminal law, and the certificate duly issued. The court canceled the certificate. The case presents an example of the arbitrary exercise of judicial power, just as the instant case does upon the admissions made by the pleading. If this ruling is correct, the Federal court may, under § 15, prevent such a manifest abuse of discretion by a State court, but under the present claim of the Government the petitioner cannot.

Finally the Government contends that a naturalization proceeding does not come under the terms of our statute of appeals, since it is not a cause or action within the meaning of these words as used in General Statutes, § 5820, which reads: "Upon the trial of all matters of fact in any cause or action, . . . if either party thinks himself aggrieved by the decision of the court upon any question or questions of law arising in the trial, he may appeal from the judgment of the court in such cause or action." The Government's contention is twofold: that this proceeding is an act of grace and no right is involved. This we have attempted to answer. And further, that there are not two parties to the proceeding, and therefore it is not an adversary one. The words "cause" or "action" in this statute are used in the sense of cause of action, or right of action, and are used interchangeably and as synonymous. We defined "action" in *Waterbury Blank Book Mfg. Co.* v. *Hurlburt,* 73 Conn. 715, 717, 49 Atl. 198, to be: "In a general sense the word 'action' means the law-

ful demand of one's right in a court of justice; and in this sense it may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides." Again, in *O'Brien's Petition* to the Superior Court for a hearing as to his qualifications for admission to the bar (79 Conn. 46, 59, 63 Atl. 777), we defined "action" : "The term 'action,' as thus used, includes any proceeding in the courts named for the purpose of obtaining such redress as the law provides."

Fordiani by law had the privilege of petitioning the court to admit him to citizenship; and when he, by proof, complied with the terms and conditions prescribed by the Naturalization Act, he was entitled to his certificate. He had the right to maintain his petition for the purpose of securing the certificate of admission which the law gave to him who brought his case within the terms of the requirements of that Act. It made no difference that in the strictest sense there was no necessary adversary party, for action includes any proceeding "for the purpose of obtaining such redress as the law provides." In a broad sense there is an adversary party to every naturalization proceeding, for the Government has the right to appear and be heard. Petitions to secure rights accorded by law when there is in fact no adverse party, are not unknown to our law, and are "actions" within the meaning of this statute and have been so regarded by our courts.

The petition of Fordiani for naturalization was an action, and under this statute an appeal lay from the decision denying his petition. The practical difficulties involved in permitting each petitioner for naturalization to appeal, and for interlocutory matters of small importance, have been pressed upon us with great force. Naturalization proceedings, it is urged, cannot be conducted with nice adherence to the ordinary

procedure, otherwise the time would not be adequate for their hearing, and the restrictions upon the hearing to strictest legal evidence would seriously interfere with these hearings. Under our practice an appeal would not lie except for some matter of law. The judge's conclusion based upon subordinate facts, would not on appeal be interfered with unless the conclusions could not be legally drawn from the subordinate facts. The finding of specific facts could not be corrected unless the facts were found without legal evidence to support them. The proceeding is of such a character that its decision must rest largely with the trial judge; if he does not exercise an unreasonable discretion his decision must stand. Rulings made in interlocutory proceedings and in the taking of the evidence, though erroneous, because not conforming strictly to the rules of law, will not furnish ground for successful appeal, unless the rulings have deprived one of the parties of his right to a fair trial, or to a full hearing, or to a determination which is made in violation of law or with an abuse of discretion. The right of appeal based upon matter of substance and not upon mere inconsequential irregularities of procedure, will do justice to the petitioner and the Government alike, and without it there can be no guaranty of justice.

The motion to dismiss is denied and the demurrer to the plea to the jurisdiction and in abatement sustained.

In this opinion the other judges concurred.